IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW ROSS and SUSAN GERARD,

    Plaintiffs,

v.                                                                                            No. 16-cv-1121 PJK/SMV

HECTOR BALDERAS, JR., ROBERT GARCIA,
SARAH MICHAEL SINGLETON,
FRANCIS J. MATHEW, RAYMOND Z. ORTIZ,
DAVID K. THOMPSON, JENNIFER ATTREP,
T. GLENN ELLINGTON, SYLVIA LAMAR,
DONITA OLYMPIA SENA,
DONNA BEVACQUA-YOUNG, PAT CASADOS,
FRANK SEDILLO, WILLIAM PACHECO,
ANTONIO GUTIERREZ, ANNA MONTOYA,
JUDAH BEN MONTANO, JOHN DOES 1–2,
MICHELLE PORTILLO, STEPHEN T. PACHECO,
JANE GAGNE, JOYCE BUSTOS, LYNN PICKARD,
PAMELA REYNOLDS, ROBIN MARTINEZ,
ROBERT RICHARDS, BRENDA WALL,
AUDREY MONTOYA, ALLSTATE INSURANCE, INC.,
A. ARROYO, and E. MONTIJO,

    Defendants,

and

PAMELA REYNOLDS,

    Counterclaimant,

v.

ANDREW ROSS and SUSAN GERARD,

    Counter-defendants.[1]

---

[1] All the claims and counterclaims have been dismissed. *See* [Docs. 8, 69, 76, 81, 91, 112, 121, 137, 144, 168, 169, 174, 188, 189]. All that remains are several motions for fees. *See* [Docs. 87, 126, 155, 158, 175, 177, 218, 219]. Plaintiff/Counter-defendant Gerard has passed away, and substitution of her estate was denied. [Doc. 232] at 2.

# MAGISTRATE JUDGE'S
# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiffs and their attorney have made numerous factual allegations in the course of this litigation that are simply beyond the pale. They have no evidence to support these fantastical allegations, and their reasons for making them are non sequiturs. I find that by making these unsupported allegations, Plaintiffs[2] and their attorney, Arash Kashanian, have abused the judicial process and should be sanctioned. I recommend that the Court award Defendant Balderas attorney fees in the amount of $4,864 pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, plus interest pursuant to 28 U.S.C. § 1961, with half to be paid by Plaintiffs and half by Mr. Kashanian personally.

## Background

It is hard to believe, but this all started as a simple dispute between Plaintiffs and their landlord. An avalanche of litigation ensued: an eviction case[3] in Santa Fe County Magistrate Court and three separate appeals therefrom; three criminal complaints against Plaintiffs for misdemeanor harassment of the landlord; seven civil lawsuits,[4] and this federal action. Plaintiffs have incurred adverse rulings at virtually every turn. Gerard complained to the Judicial Standards Commission about Judge Sena, who ruled against her in the eviction case; the

---

[2] Hereinafter, when I refer to Plaintiffs' having made unsupported factual allegations, I include their attorney, Mr. Kashanian. The fact that I include him bears mentioning here because one of the grounds for attorney fees, § 1927, requires findings as to the attorney specifically. My use of "Plaintiffs allege" rather than "Plaintiffs and their attorney allege" is for convenience and brevity, not to remove Mr. Kashanian from the analysis.

[3] One of Plaintiffs' urgent grievances (and there are many) is that the case was not actually an eviction case. Rather, it was stylized as a writ of restitution for non-payment of rent, which culminated in Gerard's eviction. [Doc. 8] at 11. Plaintiffs are convinced that it was improper to stylize the case as one for non-payment of rent and further that so stylizing it was a purposeful end-run around the due process to which Gerard should have been entitled had the case been properly stylized as one for eviction. *Id.* Herein, I refer to the case an "eviction case" (rather than a nonpayment-of-rent-culminating-in-eviction case) purely for convenience.

[4] Two of the suits were filed by the landlord for restraining orders against Plaintiffs, and five were filed by one of or both Plaintiffs against the landlord; her attorney; Judge Sena, who ruled against them in the eviction case; their neighbor whom they believe was spying on them; and others.

Commission dismissed the complaint. [Doc. 8] at 20; [Doc. 8-1] at 31. Gerard or her attorney filed at least four complaints against the landlord's attorney with the Disciplinary Board; the Board has taken no action on those complaints. [Doc. 8] at 42. Gerard made a claim against the landlord's homeowner's insurance policy; the claim was denied. *Id.* at 20, 54. Gerard filed a tort-claims notice alleging that the criminal charges brought against her and Plaintiff Ross were wrongful; that claim was denied. *Id.* at 29; [Doc. 8-1] at 76. Gerard complained to the State Attorney General about Judge Sena; the Attorney General's office declined to investigate. [Doc. 8] at 25; [Doc. 8-1] at 58.

Plaintiffs surmise that there can be but one explanation for this series of adverse outcomes: There exists "a massive conspiracy . . . [which] involves almost the entirety of the Santa Fe Judicial District Court [sic], the Santa Fe Magistrate Court, the Santa Fe Sheriff's Department, and at the helm of the Criminal Enterprise, the Attorney General for the State of New Mexico." [Doc. 8] at 2. They allege that attorneys with the Judicial Standards Commission, the Disciplinary Board, and the landlord's homeowner's insurance company are also part of this conspiracy. They see "[t]his case [a]s parallel to the 1973 Watergate scandal[.]" *Id.* at 35. And this criminal conspiracy, they are convinced, is collusion between the "*Lesbian Sisterhood*" and "*Nuestra Familia.*" *See, e.g., id.* at 37.

Plaintiffs assert that the "*Lesbian Sisterhood's*" purpose is "to ensure that any lesbians [sic] rights are held above all others." *Id.* at 37. Plaintiffs allege that the Chief Judge of the First Judicial District Court in Santa Fe and her life partner are, respectively, the "titular head" and "chief advisor" of the "*Lesbian Sisterhood,*" and that the landlord is the "Secretary-Treasurer."

3

*Id.* at 37. They assert that the Chief Judge and her partner "are in charge of a massive legal slush fund . . . in the seven figures," from which the landlord's attorney has been paid. *Id.* at 20, 36.

Plaintiffs assert that the State Attorney General, Defendant Balderas, is the "*consigliere*" of "*Nuestra Familia*" or "*Cosa Nostra.*" *Id.* at 37, 44. They assert that "the entire county of Santa Fe is being run as a crime syndicate resembling the '*Cosa Nostra*' as portrayed in the *Godfather* films, the *Goodfellas* movie, and . . . the *Sopranos* HBO Series." *Id.* at 37. They assert that Balderas ensures that everyone remains silent "in accord with the '*Code de Omerta.*'" *Id.* at 44. They allege that Balderas orchestrated some or all of the adverse court rulings, criminal prosecutions, and decisions by administrative bodies to take no action on Plaintiffs' assertions of corruption. *Id.* at 12, 16–18, 21, 23–27, 29, 33, 37, 44–47, 49, 52–55, 57–58, 66, 74–77, 79–83, 88. They accuse him of committing, inter alia, racketeering, mail fraud, extortion, and obstruction of justice. *See generally id.*

Plaintiffs filed their lawsuit in this Court on October 10, 2016. [Doc. 1]. They amended their complaint on October 12, 2016. [Doc. 8]. They have sued dozens of people they allege are involved in the "*Lesbian Sisterhood*" and "*Cosa Nostra,*" including state court judges, their clerks' office staff, members of law enforcement, the attorneys from the Judicial Standards Commission and the Disciplinary Board, the landlord, the landlord's attorney, the landlord's homeowner's insurance company, Plaintiffs' former neighbor, and others. Plaintiffs have asserted RICO claims, violations of their civil rights under 28 U.S.C. § 1983, and they ask for injunctive relief and a declaratory judgment. [Doc. 8]. They ask this Court to refer the matter to the United States Attorney for criminal prosecution. They further ask this Court to intervene in

the state court cases, including their criminal prosecutions, to reverse rulings unfavorable to them. *Id.* Finally, Plaintiffs demand $1.776 billion in damages. *Id.* at 87.

Balderas moved to dismiss on November 8, 2016. [Doc. 29]. He amended his motion on November 10, 2016. [Doc. 31]. The Honorable Paul J. Kelly, Jr., United States Circuit Judge, who is presiding in this case, granted the motion to dismiss. [Doc. 69]. Plaintiffs filed a motion to reconsider. [Doc. 70]. Judge Kelly denied the motion on January 6, 2017. [Doc. 112] at 1–3. Final judgment was entered on April 18, 2017. [Doc. 190]. Plaintiffs appealed, [Doc. 197], but the appeal was dismissed for lack of prosecution on June 13, 2017, [Doc. 229].

Balderas has moved for sanctions against Plaintiffs and their counsel pursuant to 43 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's inherent authority. [Doc. 87]. Balderas argues that the Amended Complaint was vexatious and frivolous and that any reasonable attorney would have known that it had no legal or factual support. *Id.* Judge Kelly referred the motion to me for proposed findings and a recommended disposition. [Doc. 191]. The motion is fully briefed. [Docs. 102, 115, 205, 221]. No hearing is necessary because the motion can be decided on the briefing. Having considered the relevant portions of the record, the briefing, and the relevant law, I recommend that the motion be granted.

## Standard for Awarding Fees under § 1988

"A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983). "A complaint is frivolous where it lacks an arguable basis either in law or in fact." *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 949–50 (10th Cir. 2011) (alterations and internal quotation marks omitted).

5

## Standard for Awarding Fees under § 1927

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." § 1927. Fees are appropriate "where an attorney acts recklessly or with indifference to the law[;] is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings was unwarranted." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (internal brackets omitted) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1268, 1278 (10th Cir. 2005)). Sanctions under § 1927 do not require a finding of bad faith, but an attorney's subjective good faith cannot save him from sanctions either. *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987). "Although subjective good faith on the part of a [pro se party] may in some instances excuse otherwise unreasonable conduct, **[courts] are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences**." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc) (emphasis added). "So any conduct that, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' is sanctionable." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (quoting *Braley*, 832 F.2d at 1512).

> [The Tenth Circuit has] repeatedly expressed [its] concern with the unnecessary burdens, both on the courts and on those who petition them for justice, that result from unreasonable, irresponsible and vexatious conduct of attorneys as well as parties. The power to assess costs, expenses, and attorney's fees against an attorney personally in the appropriate case is an essential tool to

> protect both litigants and the ability of the federal courts to decide
> cases expeditiously and fairly.

*Braley*, 832 F.2d at 1512 (internal citation omitted). Section "1927 permits a court to insist that the attorney bear the costs of his own lack of care." *Braley*, 832 F.2d at 1512.

The Court must ensure that § 1927 not be used in a fashion that would "dampen the legitimate zeal of an attorney in representing his client." *Braley*, 832 F.2d at 1512. Therefore, "the power to assess costs against an attorney under § 1927 . . . is a power which must be strictly construed and utilized only in instances evidencing a serious and standard disregard for the orderly process of justice." *Id.* (citations and quotations omitted).

### Standard for Awarding Fees under the Court's Inherent Authority

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which *cannot be dispensed with* in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted). "Among these *indefeasible* powers is a court's 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Farmer v. Banco Popular of N. Amer.*, 791 F.3d 1246, 1255 (10th Cir. 2015) (quoting *Chambers*, 501 U.S. at 44–45). "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49.

A court has inherent power to impose sanctions in order to "protect[] the integrity of its proceedings." *Chambers*, 501 U.S. at 58 (Scalia, J., dissenting)). Similarly, a court has inherent power to impose "a sanction for abuse of the judicial process, or, in other words, for bad faith conduct in litigation." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) (internal quotation marks omitted). The Supreme Court has described the "narrowly

7

defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel" as involving actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons."[5] *Chambers*, 501 U.S. at 45–46 (internal quotation marks omitted). The purposes for imposing sanctions are to deter repeat abuses of the judicial system, to vindicate the Court itself, and to compensate the other side. *Id.* at 56–57.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. Advance notice that the court is considering sanctions and an opportunity to respond in opposition is, of course, required. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995). Such "opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Id.*; *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230 (10th Cir. 2015).

### Discussion

Balderas offers compelling arguments as to why the legal bases for the claims asserted against him in the Amended Complaint are frivolous. [Doc. 87]. However, in recommending that sanctions be awarded, I focus instead on the patently absurd and fantastical "factual" bases asserted in support of the claims. *See id.* at 10–12. I find that the assertion and maintenance of these allegations was vexatious, wanton, and constitutes an abuse of the judicial process. I further find that Mr. Kashanian's conduct throughout this litigation has unreasonably multiplied the proceedings. Mr. Kashanian has failed to exercise a minimally acceptable level of judgment.

---

[5] Vexatious conduct is conduct "without reasonable or probable cause or excuse[.]" *vexatious*, Black's Law Dictionary (8th ed. 2004). A vexatious suit is "[a] lawsuit instituted maliciously and without good cause." *Id.* Wanton is defined as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences." *Id.*

8

His conduct, viewed objectively, manifests a reckless, if not intentional, disregard for his duties to the Court.

Let me be clear. I am not recommending that Plaintiffs and Mr. Kashanian be sanctioned simply for making controversial or potentially embarrassing allegations, e.g., that Balderas is a mafia boss. Rather, I am recommending that they be sanctioned for making such allegations (and many others just as preposterous) *without any shred of factual support*. Plaintiffs argue that what they refer to as the "rigged" eviction and the long series of adverse outcomes that flowed from it (the lost appeals, the criminal charges, the dismissed judicial and bar complaints, the denied tort and insurance claims, etc.) provide factual support for their claims. For example, Plaintiffs point to the following. On May 16, 2016, Plaintiff Gerard wrote to Defendant Balderas, alleging a criminal conspiracy between Judge Sena and Defendant Richards, the landlord's attorney. [Doc. 8-1] at 32. Balderas's office declined to open an investigation. *Id.* at 58. Later, Plaintiff Gerard sued Judge Sena civilly, alleging that she rigged the wrongful eviction. In that lawsuit, an attorney from Balderas's office (a Deputy Attorney General) entered an appearance on behalf of Judge Sena. [Doc. 8] at 46. Thus, as Plaintiffs see it, not only did Balderas refuse to investigate Sena, but he turned around and provided a defense to her. Plaintiffs are incensed about this. This is fine, as far as it goes. It is OK to be angry at the system.

The problem is that Plaintiffs look at these events (and their serial losses in the eviction saga) and leap to the literally incredible conclusion that Balderas is a mafia boss orchestrating a vast criminal conspiracy to cover up the allegedly wrongful nature of their eviction. *See, e.g.*, [Doc. 102] at 6–7, 15 (The "circumstantial evidence, based on factual occurrences throughout the

various courts and other facets in New Mexico, pointed very strongly to institutional corruption."). This logical leap—and others like it[6]—causes serious concerns because it moves beyond the bounds of reasonableness or even plausibility. It is paranoid, bordering on delusional. This allegation is but one of many that demonstrate the objectively unreasonable, vexatious and wanton nature of facts alleged in the Amended Complaint and the entire course of Plaintiffs'—and their counsel's—conduct before this Court.

Since filing the Amended Complaint, Plaintiffs have not backed away from the allegation that Balderas is a "*consigliere*" or the dozens of other unsupported and preposterous allegations. Even in the briefing on this motion for fees, Mr. Kashanian persists in these allegations. *E.g.*, *id.* at 10–11. He continues to maintain that "every allegation is supported." *Id.* at 14; *see id.*

---

[6] Here are several more examples. It is important to appreciate that this is not a complete list. These are merely a few examples. First, Plaintiffs allege that Defendant Garcia, the Sheriff of Santa Fe County, is the "'spiritual head' of the criminal '*Nuestra Familia*' that operates in Santa Fe." [Doc. 8] at 47. Based on the fact that Garcia did not respond to Gerard's demand for $100,000, Plaintiffs conclude that Garcia "retaliated [against them] by directing [Sheriff's Captain] Pacheco, Garcia's '*Jefe de Calle*', [sic] to silence [Plaintiffs] in furtherance of the Criminal Enterprise." *Id.* at 25. Second, they see the Disciplinary Board's action on a complaint against Plaintiffs' counsel as a "clear [message] that [the Board] was out for blood as part of an inquisition against Plaintiffs' counsel." [Doc. 102] at 21. Third, when Plaintiffs sued their former neighbor (for allegedly spying on them at the behest of the landlord), the neighbor's attorney ended up reporting Plaintiffs' counsel to the Disciplinary Board. The complaining attorney was an associate attorney at a Santa Fe law firm. The associate attorney's complaint was submitted via email, and he carbon copied one of the partners at the firm. Plaintiffs argue that the partner would have not have had "any interest whatsoever in a bar complaint filed by one of [his] associates. That is, unless [the partner] was directing the matter to punish Plaintiffs' counsel for having the audacity to attack the Santa Fe power structure." *Id.* at 17–18. Fourth, Plaintiffs demand $1.776 billion in damages, with which they see no problem because the number "was merely symbolic[.]" [Doc. 102] at 13. Fifth, Plaintiffs allege that Balderas offered "protection" to the "Criminal Enterprise." [Doc. 8] at 16. Sixth, they allege that Defendant Montano (a Lieutenant with the Santa Fe Police Department) was Balderas's "*Jefe de Calle*." *Id.* at 18. Seventh, they further allege that Balderas contacted Defendant Garcia (the Sheriff of Santa Fe County) and "directed him to use any non-violent means to silence [Plaintiffs]." *Id.* at 24. Eighth, they allege that Balderas was orchestrating their criminal prosecutions (via Sheriff Garcia and Defendant Bevacqua-Young, the judge assigned to at least one of the criminal cases) in order to try to stop Plaintiffs from speaking out about the alleged corruption. *Id.* at 26–27. Ninth, they allege that Balderas was also orchestrating the adverse rulings in at least one civil case, apparently to the same end. *Id.* at 29–30, 33. Tenth, they allege that Balderas "connected" the landlord and her attorney with certain Sheriff's deputies. *Id.* at 49. Eleventh, they allege that Balderas "protect[s] the corrupt institution" that is the Santa Fe Magistrate Court, which issued the original eviction order against Plaintiffs. *Id.* at 44. Twelfth, they allege that Balderas "sought and received silence" from the Judicial Standards Commission in response to Gerard's complaint about Judge Sena. *Id.* at 45.

(Plaintiffs have "examin[ed] the history of occurrences . . . and draw[n] conclusions based on <u>circumstantial</u> <u>evidence</u> and assert[ed] those conclusions.") (emphasis in original). This argument reflects a basic misunderstanding of circumstantial evidence. Under New Mexico law, circumstantial evidence may be used to prove facts. *E.g., Martin v. Unit Rig & Equip. Co., Inc.*, 715 F.2d 1434, 1439 (10th Cir. 1983) (citing *Richards v. Upjohn Co.*, 1980-NMCA-062, ¶ 9, 95 N.M. 675). But the use of circumstantial evidence "is limited by the rule that inferences drawn must be reasonable." *Andrus v. Gas Co.*, 1990-NMCA-049, ¶ 14, 110 N.M. 593. "A reasonable inference cannot be based on supposition or conjecture." *Id.* Thus, for example, when several competitors engage in parallel behavior to depress wages, it is a reasonable inference that they are part of an antitrust conspiracy. *See Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1072 (D. Colo. 2016). Here, there is no logical or reasonable connection between Plaintiffs' purported circumstantial evidence and the facts they allege. Their logic goes something like this: "We were wrongfully evicted from our home. The eviction case was decided in the First Judicial District. The Chief Judge of the First Judicial District is openly gay. Therefore, the reason we lost the eviction case is because the '*Lesbian Sisterhood*' was out to get us. And the reason we were unable to obtain any relief thereafter is because '*Nuestra Familia*,' guided by Balderas, wants to prevent us from exposing the '*Lesbian Sisterhood's*' corruption of the courts." This is so patently preposterous, it pains me to write it down. I can only conclude that these allegations were made because of some perverse desire to embarrass the Defendants, or to coerce them into paying a nuisance-value settlement to avoid further publicity. Either way, to make such unsupported allegations is reprehensible and sanctionable.

The fact that Plaintiffs and Mr. Kashanian continue to argue that there is support for the allegation that Balderas is a mafia boss demonstrates their lack of basic discernment. Rather than back away from these allegations, they attempt to further ensnare us in their thicket of paranoia. Rather than take responsibility, they blame the Disciplinary Board for their own failure to offer any factual or evidentiary support for their allegation that Balderas is a Mafioso. They believe the Disciplinary Board has "interfere[ed]" in this case by demanding that Mr. Kashanian produce evidence supporting his allegation that Balderas was a mafia boss. [Doc. 102] at 14, 22. They argue that the demand from the Disciplinary Board "extorted [Mr. Kashanian] off of litigating the case." *Id.* at 14; *see id.* at 22–23. This is nonsensical. If Mr. Kashanian had the slightest shred of evidence to support his allegations, no doubt he would have disclosed that evidence to the Board.

I could go on, but the need for sanctions is obvious. I decline to indulge Plaintiffs' and Mr. Kashanian's fantasies any further. In a sincere effort to deter further misuse of the judicial process by Plaintiffs and Mr. Kashanian, and to compensate Defendant Balderas for his counsel's time, I will recommend that attorney fees be awarded.

I have reviewed the affidavit and time records of Balderas's counsel. [Docs. 205-1, 205-2]. I have also reviewed Plaintiffs' objections to five specific time entries. [Doc. 221] at 4 (citing [Doc. 205-2] at 4–5). Those objections are meritless. I find that all of the time requested was reasonable and necessary. Plaintiffs do not object to Balderas's counsel's requested $160 hourly rate, and I find that such rate is reasonable. Lastly, under 28 U.S.C. § 1961, Balderas is entitled to interest on the award. *Transpower Constructors, Div. of Harrison Int'l Corp. v. Grand River Dam Auth.*, 905 F.2d 1413, 1423–24 (10th Cir. 1990) (applying § 1961 to awards of

attorney fees).  Interest begins to accrue on the date that the Court quantifies the amount of fees awarded.  *Midamerica Fed. Sav. & Loan Ass'n v. Shearson/Amer. Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992).

### Conclusion

Plaintiffs' fantastical claims against Balderas are frivolous, vexatious, and wanton.  They constitute an abuse of the judicial process.  Mr. Kashanian's conduct throughout this litigation has unreasonably multiplied the proceedings.  He has failed to exercise a minimally acceptable level of professional judgment, and his conduct, viewed objectively, manifests a reckless, if not intentional, disregard for his duties to the Court.  He and his clients should be sanctioned.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Defendant Attorney General Balderas's Motion for Attorney's Fees under 43 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's Inherent Authority [Doc. 87] be **GRANTED**, and that $4,864 be awarded to Defendant Balderas, pursuant to § 1927 and the Court's inherent authority, plus interest pursuant to 28 U.S.C. § 1961, with half to be paid by Plaintiffs and half by their counsel, Mr. Kashanian, personally.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.**  *See* **D.N.M.LR-Civ. 10.1.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**