IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW ROSS and SUSAN GERARD,

    Plaintiffs,

v.                                                          No. 16-cv-1121 PJK/SMV

HECTOR BALDERAS, JR., ROBERT GARCIA,
SARAH MICHAEL SINGLETON,
FRANCIS J. MATHEW, RAYMOND Z. ORTIZ,
DAVID K. THOMPSON, JENNIFER ATTREP,
T. GLENN ELLINGTON, SYLVIA LAMAR,
DONITA OLYMPIA SENA,
DONNA BEVACQUA-YOUNG, PAT CASADOS,
FRANK SEDILLO, WILLIAM PACHECO,
ANTONIO GUTIERREZ, ANNA MONTOYA,
JUDAH BEN MONTANO, JOHN DOES 1–2,
MICHELLE PORTILLO, STEPHEN T. PACHECO,
JANE GAGNE, JOYCE BUSTOS, LYNN PICKARD,
PAMELA REYNOLDS, ROBIN MARTINEZ,
ROBERT RICHARDS, BRENDA WALL,
AUDREY MONTOYA, ALLSTATE INSURANCE, INC.,
A. ARROYO, and E. MONTIJO,

    Defendants,

and

PAMELA REYNOLDS,

    Counterclaimant,

v.

ANDREW ROSS and SUSAN GERARD,

    Counter-defendants.[1]

---

[1] All the claims and counterclaims have been dismissed. *See* [Docs. 8, 69, 76, 81, 91, 112, 121, 137, 144, 168, 169, 174, 188, 189]. All that remains are several motions for fees. *See* [Docs. 87, 126, 155, 158, 175, 177, 218, 219]. Plaintiff/Counter-defendant Gerard has passed away, and substitution of her estate was denied. [Doc. 232] at 2.

# MAGISTRATE JUDGE'S
# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiffs and their attorney have made numerous factual allegations in the course of this litigation that are simply beyond the pale. They have no evidence to support these fantastical allegations, and their reasons for making them are non sequiturs. I find that by making these unsupported allegations, Plaintiffs[2] and their attorney, Arash Kashanian, have abused the judicial process and should be sanctioned. I recommend that the Court award Defendants William Pacheco, Antonio Gutierrez, and Anna Montoya attorney fees in the total amount of $12,529.05, pursuant to 43 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's inherent authority, plus interest pursuant to 28 U.S.C. § 1961, with half to be paid by Plaintiffs and half by Mr. Kashanian personally.

## Background

It is hard to believe, but this all started as a simple dispute between Plaintiffs and their landlord. An avalanche of litigation ensued: an eviction case[3] in Santa Fe County Magistrate Court and three separate appeals therefrom; three criminal complaints against Plaintiffs for misdemeanor harassment of the landlord; seven civil lawsuits,[4] and this federal action. Plaintiffs have incurred adverse rulings at virtually every turn. Gerard complained to the Judicial

---

[2] Hereinafter, when I refer to Plaintiffs' having made unsupported factual allegations, I include their attorney, Mr. Kashanian. The fact that I include him bears mentioning here because one of the grounds for attorney fees, § 1927, requires findings as to the attorney specifically. My use of "Plaintiffs allege" rather than "Plaintiffs and their attorney allege" is for convenience and brevity, not to remove Mr. Kashanian from the analysis.

[3] One of Plaintiffs' urgent grievances (and there are many) is that the case was not actually an eviction case. Rather, it was stylized as a writ of restitution for non-payment of rent, which culminated in Gerard's eviction. [Doc. 8] at 11. Plaintiffs are convinced that it was improper to stylize the case as one for non-payment of rent and further that so stylizing it was a purposeful end-run around the due process to which Gerard should have been entitled had the case been properly stylized as one for eviction. *Id.* Herein, I refer to the case an "eviction case" (rather than a nonpayment-of-rent-culminating-in-eviction case) purely for convenience.

[4] Two of the suits were filed by the landlord for restraining orders against Plaintiffs, and five were filed by one of or both Plaintiffs against the landlord; her attorney; Judge Sena, who ruled against them in the eviction case; their neighbor whom they believe was spying on them; and others.

Standards Commission about Judge Sena, who ruled against her in the eviction case; the Commission dismissed the complaint. [Doc. 8] at 20; [Doc. 8-1] at 31. Gerard or her attorney filed at least four complaints against the landlord's attorney with the Disciplinary Board; the Board has taken no action on those complaints. [Doc. 8] at 42. Gerard made a claim against the landlord's homeowner's insurance policy; the claim was denied. *Id.* at 20, 54. Gerard filed a tort-claims notice alleging that the criminal charges brought against her and Plaintiff Ross were wrongful; that claim was denied. *Id.* at 29; [Doc. 8-1] at 76. Gerard complained to the State Attorney General about Judge Sena; the Attorney General's office declined to investigate. [Doc. 8] at 25; [Doc. 8-1] at 58.

Plaintiffs surmise that there can be but one explanation for this series of adverse outcomes: There exists "a massive conspiracy . . . [which] involves almost the entirety of the Santa Fe Judicial District Court [sic], the Santa Fe Magistrate Court, the Santa Fe Sheriff's Department, and at the helm of the Criminal Enterprise, the Attorney General for the State of New Mexico." [Doc. 8] at 2. They see "[t]his case [a]s parallel to the 1973 Watergate scandal[.]" *Id.* at 35. And this criminal conspiracy, they are convinced, is collusion between the "*Lesbian Sisterhood*" and "*Nuestra Familia*."

Plaintiffs allege that their landlord had wanted to break the lease in order to get higher rent from someone else. They contend that the landlord had no lawful way out of the lease, so with the help of several judges, she had them unlawfully evicted. Plaintiffs allege that the landlord and judges are all members of the "*Lesbian Sisterhood*," whose purpose is "to ensure that any lesbians [sic] rights are held above all others." *Id.* at 37. Plaintiffs have alleged that the Chief Judge of the First Judicial District Court and her life partner are, respectively, the "titular

3

head" and "chief advisor" of the *"Lesbian Sisterhood,"* and that the landlord is the "Secretary-Treasurer." *Id.* at 37. They assert that the Chief Judge and her partner "are in charge of a massive legal slush fund . . . in the seven figures," from which the landlord's attorney has been paid. *Id.* at 20, 36.

Plaintiffs assert that once they began to fight the eviction and accuse the judges of colluding with the landlord and her attorney, another criminal organization got involved: "*Nuestra Familia.*" Plaintiffs allege that the State Attorney General, Defendant Balderas, is the "*consigliere*" of "*Nuestra Familia*" or "*Cosa Nostra*." *Id.* at 37, 44. They allege that the Sheriff of Santa Fe County, Defendant Garcia, "acts as the 'spiritual head' of the criminal '*Nuestra Familia.*'" *Id.* at 47. They allege that a Captain in the Sheriff's Office, Defendant Pacheco,[5] is Garcia's "*Jefe de Calle*" and his "henchman." *Id.* at 25. In fact, they assert that "the entire county of Santa Fe is being run as a crime syndicate resembling the '*Cosa Nostra*' as portrayed in the *Godfather* films, the *Goodfellas* movie, and . . . the *Sopranos* HBO Series." *Id.* at 37.

Plaintiffs allege that Balderas wanted to prevent them from exposing the "*Lesbian Sisterhood's*" corruption of the Santa Fe courts and to protect the landlord and the unlawful eviction. To those ends, they allege, Balderas directed Sheriff Garcia "to use any non-violent means necessary to silence [Plaintiffs,]" and identified Defendant Pacheco as a "pointman" for the landlord and her attorney to utilize in their campaign against Plaintiffs. *Id.* at 12, 24, 49. Plaintiffs allege that Balderas directed Sheriff Garcia, who directed Captain Pacheco, who in turn directed two Sheriff's Deputies, Defendants Anna Montoya and Antonio Gutierrez, to initiate the criminal charges against Plaintiffs. *Id.* at 24–27. They further allege that Captain Pacheco and

---

[5] My references to "Pachecho" are exclusively to Defendant Captain William Pacheco. I do not make any reference to the other Defendant Pacheco (Stephen T. Pacheco, chief clerk of the First Judicial District Court) herein.

Deputies Montoya[6] and Gutierrez took bribes from the landlord and her attorney. *Id.* at 50, 51, 67, 88. Finally, they allege that Pacheco was bribed by the landlord to thwart Plaintiffs' effort to serve their neighbor with a lawsuit for allegedly spying on them. *Id.* at 30–31, 67.

## Procedural History

Plaintiffs filed their lawsuit in this Court on October 10, 2016. [Doc. 1]. They filed an amended complaint on October 12, 2016. [Doc. 8]. They have sued dozens of the people they allege are involved in the "*Lesbian Sisterhood*" and "*Cosa Nostra*," including state court judges, their clerks' office staff members, law enforcement officers, attorneys from the Judicial Standards Commission and the Disciplinary Board, the landlord, the landlord's attorney, the landlord's homeowner's insurance company, Plaintiffs' former neighbor, and others. Plaintiffs have asserted RICO claims, violations of their civil rights under 28 U.S.C. § 1983, and they asked for injunctive relief and a declaratory judgment. [Doc. 8]. They asked this Court to refer the matter to the United States Attorney for criminal prosecution. They further asked this Court to intervene in the state court cases, including their criminal prosecutions, to reverse certain unfavorable rulings. *Id.* Finally, Plaintiffs demanded $1.776 billion in damages. *Id.* at 87.

When the Sheriff's Office Defendants (William Pacheco, Anna Montoya, Antonio Gutierrez, and Sheriff Garcia) had not answered the Amended Complaint by November 8, 2016, Plaintiffs moved for default judgments against them in the amount of $10 million each. [Docs. 37, 38, 40]. However, Plaintiffs had not requested entry of default by the Court Clerk as required by Fed. R. Civ. P. 55(a). The Honorable Paul J. Kelly, Jr., United States Circuit Judge, who is presiding in this case, denied the motions for default judgment on

---
[6] My references to "Montoya" are exclusively to Defendant Deputy Anna Montoya. I make no reference to the other Montoya defendant (Audrey Montoya, Plaintiffs' former neighbor) herein.

November 29, 2016. [Doc. 68]. He did so for several reasons: Plaintiffs had not secured an entry of default; the Sheriff's Office Defendants had answered on November 15, 2016; Plaintiffs had identified no prejudice in the seven-day delay; and because of the Court's preference to decide cases on the merits. *Id.*

Pacheco moved for summary judgment on January 11, 2017. [Doc. 118]. When briefing was complete, [Docs. 128, 132, 133], Judge Kelly granted the motion on February 15, 2017, [Doc. 144]. Gutierrez and Montoya moved for summary judgment on January 11, 2017. [Doc. 142]. When briefing was complete, [Docs. 152, 156], Judge Kelly granted the motion on March 16, 2017, [Doc. 144]. Final judgment was entered on April 18, 2017. [Doc. 190]. Plaintiffs appealed, [Doc. 197], but the appeal was dismissed for lack of prosecution on June 13, 2017, [Doc. 229].

Pacheco (in his own motion) and Gutierrez and Montoya (in their joint motion) move for sanctions against Plaintiffs and their counsel pursuant to 43 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's inherent authority. [Docs. 155, 177]. Pacheco, Gutierrez, and Montoya argue that they should be awarded their attorney fees because the entire course of this litigation has been "entirely unfounded—factually and legally." [Doc. 155] at 1; [Doc. 177] at 1. They argue that Plaintiffs' counsel, Mr. Kashanian, unreasonably and vexatiously multiplied the proceedings by continuing to prosecute the claims when he knew or should have known that that the lawsuit was completely frivolous. [Doc. 155] at 1; [Doc. 177] at 1. Judge Kelly referred the motions to me for proposed findings and a recommended disposition. [Doc. 191]. The motions are fully briefed. [Docs. 165, 170, 185, 201, 220]. No hearing is necessary because the motions can be

decided on the briefing. Having considered the relevant portions of the record, the briefing, and the relevant law, I recommend that the motions be granted.

## Standard for Awarding Fees under § 1988

"A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983). "A complaint is frivolous where it lacks an arguable basis either in law or in fact." *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 949–50 (10th Cir. 2011) (alterations and internal quotation marks omitted).

## Standard for Awarding Fees under § 1927

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." § 1927. Fees are appropriate "where an attorney acts recklessly or with indifference to the law[;] is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings was unwarranted." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (internal brackets omitted) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1268, 1278 (10th Cir. 2005)). Sanctions under § 1927 do not require a finding of bad faith, but an attorney's subjective good faith cannot save him from sanctions either. *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987). "Although subjective good faith on the part of a [pro se party] may in some instances excuse otherwise unreasonable conduct, **[courts] are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with**

7

**'an empty head and a pure heart' is not responsible for the consequences**." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc) (emphasis added). "So any conduct that, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' is sanctionable." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (quoting *Braley*, 832 F.2d at 1512).

> [The Tenth Circuit has] repeatedly expressed [its] concern with the unnecessary burdens, both on the courts and on those who petition them for justice, that result from unreasonable, irresponsible and vexatious conduct of attorneys as well as parties. The power to assess costs, expenses, and attorney's fees against an attorney personally in the appropriate case is an essential tool to protect both litigants and the ability of the federal courts to decide cases expeditiously and fairly.

*Braley*, 832 F.2d at 1512 (internal citation omitted). Section "1927 permits a court to insist that the attorney bear the costs of his own lack of care." *Braley*, 832 F.2d at 1512.

The Court must ensure that § 1927 not be used in a fashion that would "dampen the legitimate zeal of an attorney in representing his client." *Braley*, 832 F.2d at 1512. Therefore, "the power to assess costs against an attorney under § 1927 . . . is a power which must be strictly construed and utilized only in instances evidencing a serious and standard disregard for the orderly process of justice." *Id.* (citations and quotations omitted).

### Standard for Awarding Fees under the Court's Inherent Authority

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which *cannot be dispensed with* in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted). "Among these *indefeasible* powers is a court's 'ability to fashion an appropriate sanction for conduct which abuses the judicial

8

process.'" *Farmer v. Banco Popular of N. Amer.*, 791 F.3d 1246, 1255 (10th Cir. 2015) (quoting *Chambers*, 501 U.S. at 44–45). "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49.

A court has inherent power to impose sanctions in order to "protect[] the integrity of its proceedings." *Chambers*, 501 U.S. at 58 (Scalia, J., dissenting)). Similarly, a court has inherent power to impose "a sanction for abuse of the judicial process, or, in other words, for bad faith conduct in litigation." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) (internal quotation marks omitted). The Supreme Court has described the "narrowly defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel" as involving actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons."[7] *Chambers*, 501 U.S. at 45–46 (internal quotation marks omitted).

The purposes of imposing sanctions include "ensur[ing] that . . . abuses [of the judicial system are] not repeated[,] vindicat[ing] [the Court] itself[,] and compensat[ing the other side]." *Id.* at 56–57.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. Advance notice that the court is considering sanctions and an opportunity to respond in opposition is, of course, required. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995). Such "opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Id.*; *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230 (10th Cir. 2015).

---

[7] Vexatious conduct is conduct "without reasonable or probable cause or excuse[.]" *vexatious*, Black's Law Dictionary (8th ed. 2004). A vexatious suit is "[a] lawsuit instituted maliciously and without good cause." *Id.* Wanton is defined as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences." *Id.*

9

## Discussion

I find that Defendants Pacheco, Gutierrez, and Montoya are prevailing parties under §1988. I further find that this lawsuit was frivolous and vexatious. The claims against them lack any arguable basis in fact. They are entitled to attorney fees under § 1988.

Furthermore, Mr. Kashanian's assertion and prosecution of such claims was vexatious and wanton. His conduct throughout this litigation has unreasonably multiplied the proceedings. Mr. Kashanian has failed to exercise a minimally acceptable level of judgment. His conduct, viewed objectively, manifests a reckless, if not intentional, disregard for his duties to the Court. Pursuant to § 1927, Mr. Kashanian should be required to "bear the costs of his own lack of care." *Braley*, 832 F.2d at 1512.

Lastly, Plaintiffs' and Mr. Kashanian's conduct during this litigation constitutes an abuse of the judicial process. Therefore, independent of either § 1988 or § 1927, I find that the Court should award attorney fees to Defendants Pacheco, Gutierrez, and Montoya against Plaintiffs and Mr. Kashanian, personally, pursuant to its own inherent authority.

I focus my findings herein on the preposterous and unsupported "factual" allegations asserted and maintained by Plaintiffs. For example, Plaintiffs alleged (and continue to maintain) that Defendant Pacheco is a "*Jefe de Calle*" in "the criminal '*Nuestra Familia*' that operates in Santa Fe," [Doc. 8] at 25, 47, and that Defendants Gutierrez and Montoya initiated criminal charges against Plaintiffs on Pacheco's order, in furtherance of the "Criminal Enterprise." *E.g., id.* at 25.

Let me be clear. I am not recommending that Plaintiffs and Mr. Kashanian be sanctioned because they make controversial allegations (e.g., that Pacheco, Gutierrez, and Montoya are part

10

of "*Nuestra Familia*"). I am recommending that they be sanctioned because they make such allegations (and many others just as preposterous) *without any shred of factual support*.

Plaintiffs attempt to explain why their allegations were not frivolous because, as they see it, the allegations *were* supported. [Doc. 165] at 2, 3 (incorporating by reference the arguments made in [Doc. 138] at 4–6). They maintain that "the circumstantial evidence" amounts to sufficient support. [Doc. 138] at 4. Specifically, they doggedly characterize the deputies' calling them on five occasions and ordering them to stop contacting the landlord as "rampant and brazen extortion." *Id.* at 4; *see* [Doc. 220] at 7. They insist that the deputies "had absolutely no basis to silence Plaintiffs [i.e., to tell Plaintiffs to stop contacting the landlord], and had no reason to repeatedly make efforts to silence them as if they were on a vendetta." [Doc. 138] at 5; *see* [Doc. 220] at 7. Based on the deputies' orders and the subsequent criminal charges for harassment of the landlord, they make the following conclusion:

> [W]hat do you call an organization's behavior that freely extorts and silences individuals with no legitimate authority to permit such behavior such as what [the deputies] did to the Plaintiffs? It is in fact mafia-like behavior. And what do you call the leader of such an organization who allows for such behavior, despite being made aware of it multiple times? It is fair to say that this individual could be called the "spiritual head" of such an organization behaving in a mafia-like way. And that is exactly what the Amended Complaint in the instant matter alleges. The Amended Complaint *never* stated that Garcia was running an *actual* criminal organization; only that his department was *acting* like a criminal organization in this particular context.

[Doc. 138] at 6.

First, Plaintiffs' statement that they never alleged an *actual* criminal organization is spurious. *E.g.,* [Doc. 8] at 25 ("Garcia retaliated by directing William Pacheco, Garcia's '*Jefe de Calle*[,]' to silence [Plaintiffs] in furtherance of the Criminal Enterprise.").

11

Second, and more to the point here, the problem with these allegations is that Plaintiffs look at these events (i.e., the deputies' orders to stop contacting the landlord and the criminal charges for harassment of the landlord) and leap to the literally incredible conclusion that Pacheco, Gutierrez, and Montoya are involved in "*Nuestra Familia*," and that the criminal charges were part of a vast criminal conspiracy to cover up the allegedly wrongful nature of their eviction. This logical leap—and others like it[8]—causes serious concerns because it moves beyond the bounds of reasonableness or even plausibility. It is paranoid, bordering on delusional. These allegations are but a few of many that demonstrate the objectively unreasonable, vexatious, and wanton nature of facts alleged in the Amended Complaint and the entire course of Plaintiffs'—and their counsel's—conduct before this Court.

Since filing the Amended Complaint, Plaintiffs have not backed away from the allegation that criminal charges were brought against them because Pacheco, Gutierrez, and Montoya were

---

[8] Here are several more examples. It is important to appreciate that this is not a complete list. These are merely a few examples. First, Plaintiffs characterize the Disciplinary Board's action on a complaint against Plaintiffs' counsel as a "clear [message] that [the Board] was out for blood as part of an inquisition against Plaintiffs' counsel." [Doc. 102] at 21. Second, when Plaintiffs sued their former neighbor (for allegedly spying on them at the behest of the landlord), the neighbor's attorney ended up reporting Plaintiffs' counsel to the Disciplinary Board. The complaining attorney was an associate attorney at a Santa Fe law firm. The associate attorney's complaint was submitted via email, and he carbon copied one of the partners at the firm. Plaintiffs argue that the partner would not have had "any interest whatsoever in a bar complaint filed by one of [his] associates. That is, unless [the partner] was directing the matter to punish Plaintiffs' counsel for having the audacity to attack the Santa Fe power structure." *Id.* at 17–18. Third, Plaintiffs demand $1.776 billion in damages, with which they see no problem because the number "was merely symbolic[.]" [Doc. 102] at 13. Fourth, Plaintiffs allege that Balderas offered "protection" to the "Criminal Enterprise." [Doc. 8] at 16. Fifth, they allege that Defendant Montano (a Lieutenant with the Santa Fe Police Department) was Balderas's "*Jefe de Calle*." *Id.* at 18. Sixth, they allege that Balderas was also orchestrating the adverse rulings in at least one civil case. *Id.* at 29–30, 33. Seventh, they allege that Balderas "connected" the landlord and her attorney with certain Sheriff's deputies. *Id.* at 49. Eighth, they allege that Balderas "protect[s] the corrupt institution" that is the Santa Fe Magistrate Court, which issued the original eviction order against Plaintiffs. *Id.* at 44. Ninth, they allege that Balderas "sought and received silence" from the Judicial Standards Commission in response to Plaintiffs' complaint about Judge Sena. *Id.* at 45. Tenth, they allege that in August of 2016, Plaintiff Gerard observed Pacheco talking to the landlord. Thereafter, Mr. Kashanian called Pacheco and confronted him, at which point Pacheco hung up the phone. Plaintiffs and Mr. Kashanian argue that these two events support their wild conspiracy allegations. [Doc. 220] at 4–6. Eleventh, Plaintiffs and Mr. Kashanian blame the Sheriff's Office for the apparent suicide of Plaintiff Gerard in March of 2017. *Id.* at 4; [Doc. 161].

involved in "*Nuestra Familia*" and, thus, wanted to "silence" Plaintiffs and preserve the allegedly unlawful eviction. *See, e.g.,* [Doc. 220] at 3–4 (as to Pacheco), 6–7 (as to Gutierrez and Montoya). I am not moved by Mr. Kashanian's eleventh hour qualification that "[t]he Amended Complaint *never* stated that Garcia was running an *actual* criminal organization; only that his department was *acting* like a criminal organization[.]" [Doc. 138] at 6 (emphases in original). This trivial and disingenuous distinction misses the boat. Plaintiffs and Mr. Kashanian persist in arguing that their "massive conspiracy" theory "is what Plaintiffs had [come up with] to explain the circumstantial evidence that was before them." *Id.* at 4. The fact that they continue to argue that the eviction and the series of adverse outcomes constitute "circumstantial evidence" to support the absurd allegations of Pacheco, Gutierrez, and Montoya's role in a "Criminal Enterprise" evidences Plaintiffs' and Mr. Kashanian's lack of basic discernment. *See Andrus v. Gas Co.*, 1990-NMCA-049, ¶ 14, 110 N.M. 593 ("[The use of circumstantial evidence is] limited by is limited by the rule that inferences drawn must be reasonable. . . . A reasonable inference cannot be based on supposition or conjecture.").

I could go on, but the need for sanctions is obvious. I decline to indulge Plaintiffs' and Mr. Kashanian's fantasies any further. In a sincere effort to deter further misuse of the judicial process by Plaintiffs and Mr. Kashanian, to deter them from making further vexatious, reckless, and wanton allegations, and to compensate Defendant Garcia for his counsel's time, I will recommend that attorney fees be awarded.

### Lodestar Amount of Fees

In general, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption

that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley*, 461 U.S. at 433 (1983), and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543–44 (2010)). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case;" and (ii) "the appropriate hourly rates." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson*, 160 F.3d at 1281; *see Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates. *See Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006)).

I have reviewed defense counsel's affidavit and time records. [Doc. 201-1]. Mr. Dickman requests an award of $12,059.05 for 66.1 hours of work performed on behalf of Defendants Pacheco, Gutierrez, and Montoya between January 5, 2017, and April 19, 2017, at an hourly rate of $175, plus gross receipts taxes.[9] [Doc. 201] at 7; [Doc. 201-1] at 3.

---

[9] Mr. Dickman is careful to explain that he is not seeking any fees that he sought on behalf of Defendant Garcia. If he requested fees in Garcia's motion, he is not requesting those same fees here. *E.g.,* [Doc. 201] at 1.

14

Plaintiffs make no specific challenge to the amount of fees requested. Instead, Plaintiffs generally complain that the amount requested is too high.[10] [Doc. 220] at 12. I disagree. I find that all of the work reflected in the time sheet was reasonable and necessary to the defense of Pacheco, Gutierrez, and Montoya. *See* [Doc. 201-1]. Additionally, Plaintiffs do not object to Mr. Dickman's requested $175 hourly rate, and I find that such rate is reasonable. Lastly, under 28 U.S.C. § 1961, Pacheco, Gutierrez, and Montoya are entitled to interest on the award, *Transpower Constructors, Div. of Harrison Int'l Corp. v. Grand River Dam Auth.*, 905 F.2d 1413, 1423–24 (10th Cir. 1990) (applying § 1961 to awards of attorney fees), which begins to accrue on the date that the Court quantifies the amount of the award, *Midamerica Fed. Sav. & Loan Ass'n v. Shearson/Amer. Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992).

## Conclusion

Plaintiffs' fantastical claims are vexatious, wanton, and constitute an abuse of the judicial process. Mr. Kashanian's conduct throughout this litigation has unreasonably multiplied the proceedings. He has failed to exercise a minimally acceptable level of professional judgment, and his conduct, viewed objectively, manifests a reckless, if not intentional, disregard for his duties to the Court. He and his clients should be sanctioned

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Defendant Pacheco's Application for Award of Attorney's Fees [Doc. 155] be **GRANTED**, that Defendant Gutierrez's and Defendant Montoya's Application for Award of Attorney Fees [Doc. 177] be **GRANTED**, and that Defendants William Pacheco, Antonio Gutierrez, and Anna Montoya be

---

[10] The only specific challenge Plaintiffs make relates to the fees for responding to the motions for default judgment. [Doc. 220] at 12. However, Defendants do not request those fees. [Doc. 201-1] (time sheets for requested fees, which do not include any entries for responding to the motions for default judgment).

awarded attorney fees in the total amount of $12,529.05, pursuant to 43 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's inherent authority, plus interest pursuant to 28 U.S.C. § 1961, with half to be paid by Plaintiffs and half by Mr. Kashanian personally.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**