IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW ROSS and SUSAN GERARD,

    Plaintiffs,

v.                                                                                                                        No. 16-cv-1121 PJK/SMV

HECTOR BALDERAS, JR., ROBERT GARCIA,
SARAH MICHAEL SINGLETON,
FRANCIS J. MATHEW, RAYMOND Z. ORTIZ,
DAVID K. THOMPSON, JENNIFER ATTREP,
T. GLENN ELLINGTON, SYLVIA LAMAR,
DONITA OLYMPIA SENA,
DONNA BEVACQUA-YOUNG, PAT CASADOS,
FRANK SEDILLO, WILLIAM PACHECO,
ANTONIO GUTIERREZ, ANNA MONTOYA,
JUDAH BEN MONTANO, JOHN DOES 1–2,
MICHELLE PORTILLO, STEPHEN T. PACHECO,
JANE GAGNE, JOYCE BUSTOS, LYNN PICKARD,
PAMELA REYNOLDS, ROBIN MARTINEZ,
ROBERT RICHARDS, BRENDA WALL,
AUDREY MONTOYA, ALLSTATE INSURANCE, INC.,
A. ARROYO, and E. MONTIJO,

    Defendants,

and

PAMELA REYNOLDS,

    Counterclaimant,

v.

ANDREW ROSS and SUSAN GERARD,

    Counter-defendants.[1]

---

[1] All the claims and counterclaims have been dismissed. *See* [Docs. 8, 69, 76, 81, 91, 112, 121, 137, 144, 168, 169, 174, 188, 189]. All that remains are several motions for fees. *See* [Docs. 87, 126, 155, 158, 175, 177, 218, 219]. Plaintiff/Counter-defendant Gerard has passed away, and substitution of her estate was denied. [Doc. 232] at 2.

# MAGISTRATE JUDGE'S
# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiffs and their attorney have made numerous factual allegations in the course of this litigation that are simply beyond the pale. They have no evidence to support these fantastical allegations, and their reasons for making them are non sequiturs. I find that by making these unsupported allegations, Plaintiffs and their attorney, Arash Kashanian, have abused the judicial process and made a mockery of these proceedings. Defendant Richards, for a fourth time, has moved for sanctions against Plaintiffs and Mr. Kashanian in the form of attorney's fees. In Proposed Findings and Recommended Dispositions issued concurrently herewith, I have recommended that Plaintiffs and Mr. Kashanian be ordered to pay the attorney's fees of several other Defendants, all of whom are represented by counsel. Defendant Richards, however, represents himself. As I have explained to Richards previously, pro se litigants—even if they are attorneys themselves—are not entitled to attorney's fees under 42 U.S.C. § 1988 or under 28 U.S.C. § 1927. For the same reasons, I recommend that the Court decline to award him attorney's fees under its inherent authority. Additionally, Richards fails to cite any authority for his novel argument that he should be awarded paralegal fees as a "cost." Absent authority to support his position, the request should be denied. *See Sorbo v. UPS*, 432 F.3d 1169, 1179–80 (10th Cir. 2005) (explaining that the district court "has no discretion to award items as costs that are not set out in [28 U.S.C. §] 1920."). Finally, under the egregious circumstances of this case, I recommend that the Court deny Plaintiffs' Motion for Rule 11 Sanctions against Defendant Richards. Simply put, even if Defendant Richards violated Rule 11, it would be unjust for Plaintiffs to take any award.

**Background**

It is hard to believe, but this all started as a simple dispute between Plaintiffs and their landlord. An avalanche of litigation ensued: an eviction case[2] in Santa Fe County Magistrate Court and three separate appeals therefrom; three criminal complaints against Plaintiffs for misdemeanor harassment of the landlord; seven civil lawsuits,[3] and this federal action. Plaintiffs have incurred adverse rulings at virtually every turn. Gerard complained to the Judicial Standards Commission about Judge Sena, who ruled against her in the eviction case; the Commission dismissed the complaint. [Doc. 8] at 20; [Doc. 8-1] at 31. Gerard or her attorney filed at least four complaints against the landlord's attorney with the Disciplinary Board; the Board has taken no action on those complaints. [Doc. 8] at 42. Gerard made a claim against the landlord's homeowner's insurance policy; the claim was denied. *Id.* at 20, 54. Gerard filed a tort-claims notice alleging that the criminal charges brought against her and Plaintiff Ross were wrongful; that claim was denied. *Id.* at 29; [Doc. 8-1] at 76. Gerard complained to the State Attorney General about Judge Sena; the Attorney General's office declined to investigate. [Doc. 8] at 25; [Doc. 8-1] at 58.

Plaintiffs surmise that there can be but one explanation for this series of adverse outcomes: There exists "a massive conspiracy . . . [which] involves almost the entirety of the Santa Fe Judicial District Court [sic], the Santa Fe Magistrate Court, the Santa Fe Sheriff's

---

[2] One of Plaintiffs' urgent grievances (and there are many) is that the case was not actually an eviction case. Rather, it was stylized as a writ of restitution for non-payment of rent, which culminated in Gerard's eviction. [Doc. 8] at 11. Plaintiffs are convinced that it was improper to stylize the case as one for non-payment of rent and further that so stylizing it was a purposeful end-run around the due process to which Gerard should have been entitled had the case been properly stylized as one for eviction. *Id.* Herein, I refer to the case an "eviction case" (rather than a nonpayment-of-rent-culminating-in-eviction case) purely for convenience.

[3] Two of the suits were filed by the landlord for restraining orders against Plaintiffs, and five were filed by one of or both Plaintiffs against the landlord; her attorney; Judge Sena, who ruled against them in the eviction case; their neighbor whom they believe was spying on them; and others.

Department, and at the helm of the Criminal Enterprise, the Attorney General for the State of New Mexico." [Doc. 8] at 2. They allege that attorneys with the Judicial Standards Commission, the Disciplinary Board, and the landlord's homeowner's insurance company are also part of this conspiracy. They see "[t]his case [a]s parallel to the 1973 Watergate scandal[.]" *Id.* at 35. And this criminal conspiracy, they are convinced, is collusion between the "*Lesbian Sisterhood*" and "*Nuestra Familia.*" *See, e.g., id.* at 37.

Plaintiffs assert that the "*Lesbian Sisterhood's*" purpose is "to ensure that any lesbians [sic] rights are held above all others." *Id.* at 37. They allege that the Chief Judge of the First Judicial District Court in Santa Fe and her life partner are, respectively, the "titular head" and "chief advisor" of the "*Lesbian Sisterhood*," and that the landlord is the "Secretary-Treasurer." *Id.* at 37. They assert that the Chief Judge and her partner "are in charge of a massive legal slush fund . . . in the seven figures," from which the landlord's attorney, Defendant Richards, has been paid. *Id.* at 20, 36.

Plaintiffs assert that the State Attorney General, Defendant Balderas, is the "*consigliere*" of "*Nuestra Familia*" or "*Cosa Nostra.*" *Id.* at 37, 44. They assert that "the entire county of Santa Fe is being run as a crime syndicate resembling the '*Cosa Nostra*' as portrayed in the *Godfather* films, the *Goodfellas* movie, and . . . the *Sopranos* HBO Series." *Id.* at 37. They assert that Balderas ensures that everyone remains silent "in accord with the '*Code de Omerta*.'" *Id.* at 44. They allege that Balderas orchestrated some or all of the adverse court rulings, criminal prosecutions, and decisions by administrative bodies to take no action on Plaintiffs' assertions of corruption. *Id.* at 12, 16–18, 21, 23–27, 29, 33, 37, 44–47, 49, 52–55, 57–58, 66, 74–77, 79–83, 88. They further allege that Defendant Richards is connected to both the "*Lesbian*

4

*Sisterhood*" and "*Cosa Nostra.*" *E.g., id.* at 37. In fact, they allege Richards is "the lead conspirator of the Criminal Enterprise." *Id.*

### **Procedural History**

Plaintiffs filed their lawsuit in this Court on October 10, 2016. [Doc. 1]. They amended their complaint on October 12, 2016. [Doc. 8]. Besides Defendant Richards, they have sued dozens of people they allege are involved in the "*Lesbian Sisterhood*" and "*Cosa Nostra*," including state court judges, their clerks' office staff, members of law enforcement, the attorneys from the Judicial Standards Commission and the Disciplinary Board, the landlord, the landlord's homeowner's insurance company, Plaintiffs' former neighbor, and others. Plaintiffs have asserted RICO claims, violations of their civil rights under 28 U.S.C. § 1983, and they ask for injunctive relief and a declaratory judgment. [Doc. 8]. They ask this Court to refer the matter to the United States Attorney for criminal prosecution. They further ask this Court to intervene in the state court cases, including their criminal prosecutions, to reverse certain unfavorable rulings. *Id.* Finally, Plaintiffs demand $1.776 billion in damages. *Id.* at 87.

Early on, Plaintiffs moved for a temporary restraining order against Richards, [Doc. 41] ("Application for TRO"). They alleged that Richards "was a known associate of the 'Gambino Crime Family[.]'" *Id.* at 3. They further alleged that he was relocated to New Mexico under the Witness Protection Program. *Id.* They alleged that he has repeatedly threatened them with physical harm if they did not abandon their legal claims. *Id.* They alleged that he has caused their home be surveilled day and night. *Id.* They further alleged that he hired "a masked marauder on a Kawasaki motorcycle" to break into Plaintiff Gerard's vehicle and steal her hearing aids. [Doc. 41-3] at 2.

There has never been anything presented to this Court, nor any suggestion that anything ever could be presented, that would amount to evidentiary support for the claims that Defendant Richards is connected to the mafia or the Witness Protection Program. *See* [Doc. 41], including [Docs. 41-1 through 41-3]. Curiously, the Application for TRO did not ask the Court to enjoin Defendant Richards from further harassing Plaintiffs.[4] *See* [Doc. 41]. Rather, it asked the Court to order Defendant Richards to "furnish . . . both his real name and the name he was born with in order for Plaintiffs to investigate his past prior [sic] bad acts." *Id.* at 4. Defendant Richards responded in opposition, arguing that the Application for TRO was frivolous and requesting, among other things, that the Court sanction Plaintiffs and their attorney. [Doc. 46] at 13, 15.

The Honorable Paul J. Kelly, Jr., United States Circuit Judge, who is presiding in this case, denied the Application for TRO on December 2, 2016. [Doc. 77]. He found that Plaintiffs had completely failed to address the governing standard, let alone show a clear and unequivocal right to relief. *Id.* at 2. He further found that Plaintiffs had no corroborating evidence of their claims against Defendant Richards. *Id.* Finally, Judge Kelly acknowledged Defendant Richards' request for sanctions against Plaintiffs and their counsel under Rule 11, and he referred those requests to me upon a formal motion. *Id.* at 3.

Defendant Richards filed his formal motion requesting attorney's fees under Rule 11 and § 1927. [Doc. 80]. After briefing was complete, Richards filed a "corrected" motion. [Doc. 86]. I recommended denying both motions because Richards had failed to comply with Rule 11's safe harbor provision. [Doc. 113] at 6–7. I further recommended that the Court deny any attorney's

---

[4] In the "Information Sheet for T.R.O.," which is attached to the Application, Plaintiffs list the relief sought as an order restraining Defendant Richards or his agents from any contact with Plaintiffs and from committing further criminal acts against them. [Doc. 41-1] at 1.

6

fees under § 1927 because Richards is proceeding pro se. *Id.* at 7–9. Finally, I recommended denying Richards' request for attorney's fees pursuant to the Court's inherent authority. I found that he waived that argument because he failed to raise it until the reply to his second motion. *Id.* at 9.

On seeing my recommendations, Richards attempted to resuscitate the waived argument by "withdrawing" his first two motions. [Docs. 114, 119]. He filed a third motion for attorney's fees explicitly invoking the Court's inherent authority. [Doc. 127]. Over Richards' objections, Judge Kelly adopted my Proposed Findings and Recommended Disposition ("PF&RD"). [Doc. 174]. He found that Richards' attempts to withdraw his first two motions and replace them with the third were ineffective. *Id.* at 3. Richards had waived the inherent-authority argument. *Id.*

Richards filed a motion for summary judgment on February 27, 2017. [Doc. 153]. When briefing was complete [Docs. 162, 163], Judge Kelly granted the motion, [Doc. 169]. Final judgment was entered on April 18, 2017. [Doc. 190]. Plaintiffs appealed, [Doc. 197], but the appeal was dismissed for lack of prosecution on June 13, 2017, [Doc. 229].

Richards has now filed his fourth motion for attorney's fees. [Doc. 175]. He argues that the claims against him were frivolous and brought for no other reason than to harass him. *Id.* at 1. The motion is fully briefed. [Docs. 181, 183, 206, 222, 226]. Richards has also filed an Affidavit of Costs and an Amended Affidavit of Costs, [Docs. 193, 195], which I construe as a Motion to Tax Costs; it is ready for ruling, [Docs. 203, 211].[5] Finally, Plaintiffs have moved for Rule 11 Sanctions against Richards [Doc. 219], and that motion is fully briefed, [Doc. 225].

---

[5] Plaintiffs move for leave to file a surreply to the Motion to Tax Costs. [Doc. 218]. That motion is ripe, [Doc. 224]. For the reasons herein, I will recommend that no surreply be permitted because it would be moot.

7

Judge Kelly referred the motions to me for proposed findings and a recommended disposition. [Doc. 191]. No hearing is necessary because the motions can be decided on the briefing. Having considered the relevant portions of the record, the briefing, and the relevant law, I recommend that all the motions be denied.

### Defendant Richards' Motion for Attorney's Fees

Quite understandably, Defendant Richards would like to see Plaintiffs and Mr. Kashanian sanctioned. He argues that he is entitled to an award of attorney's fees and costs pursuant to § 1988, § 1927, and the Court's inherent authority, as a sanction, "or at the very least his out[-]of[-]pocket costs for his paralegal's fees[.]" [Doc. 175] at 2. As I have explained to Richards before, however, he is simply not entitled to recover attorney's fees for representing himself. *See* [Doc. 113].

It is well-settled that as a pro se litigant, Richards cannot recover attorney's fees under § 1988. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (holding that a pro se party cannot obtain attorney's fees in a 42 U.S.C. § 1988 case, even if that pro se party is himself an attorney). As cited in my earlier PF&RD, [Doc. 113] at 8, the Supreme Court explained in *Kay* that restricting attorney-fee awards to litigants who had hired independent attorneys would encourage them to do so and thereby increase the quality of litigation, *See* 499 U.S. at 435–36. *Kay* has not been overturned since my PF&RD was filed. Nor is the logic of *Kay* any less compelling. Therefore, I recommend denying Richards' request for attorney fees under § 1988.

*Kay* addressed attorney's fees in the § 1988 context. However, applying the same reasoning in the § 1927 context, I recommended denying Richards' prior applications for fees under § 1927. [Doc. 113] at 7–9; [Doc. 174] at 2–3. Richards provides no compelling argument

why I should change course now. I recommend denying his request for attorney's fees under § 1927.

As to the question of whether the Court could award him attorney's fees pursuant to its inherent authority, Richards relies on *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1377–78 (Fed. Cir. 2002). There, the Federal Circuit explained that "in proper circumstances," a court may exercise its inherent authority to award attorney's fees to a pro se attorney. If a court lacked such authority, it would "place a *pro se* litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct, but not be liable for attorney's fees to a *pro se* party." *Id.*

In weighing the policies outlined in *Kay* and *Pickholtz*, I find that *Kay* is more persuasive, particularly in this case.[6] Even if the Court had inherent authority to award attorney's fees to a pro se party, a matter I decline to pass on, I would recommend that the Court decline to exercise such authority here, for the reasons explained in *Kay*.

### **Defendant Richards' Motion to Tax Costs**

Defendant Richards filed an Affidavit of Costs on May 1, 2017, [Doc. 193], and an Amended Affidavit of Costs on May 3, 2017, [Doc. 195]. He indicates that he hired a paralegal

---

[6] Richards is indignant at the suggestion that he hire an attorney to represent him. *See* [Doc. 183] at 1–2 ("It is unclear how Richards could decrease the quality of litigation below the level now set by Plaintiff[s] or bringing even more lawyers into this case would increase the quality of litigation."). One would hope that assistance from independent counsel might have prevented the chicanery in Richards' attempts to avoid my adverse findings on his first two motions for fees. *See* [Doc. 174] at 3. Similarly disappointing is that in this current motion, Richards asks for some of the very same fees that the Court has already denied. *Compare* [Doc. 86] at 9 (requesting certain fees), *and* [Doc. 174] (Court's denial of those fees), *with* [Doc. 206] at 13–14 (requesting the same fees again). Likewise, Richards asks for some of the same paralegal fees in his motion to tax costs as he does in his motion for attorney's fees. *Compare* [Doc. 211] at 11 (paralegal's invoice attached to motion to tax costs), *with* [Doc. 206] at 22 (same paralegal's invoice attached to Richards' Supplemental Brief in Support of his Motion for Attorney's Fees). It also appears that Richards ghostwrote Pamela Reynolds' pro se Answer because he billed for doing so. *Compare* [Doc. 183] at 4 (billing for Reynolds' Answer), *and* [Doc. 206] at 12 (same), *with* [Doc. 44] (Reynolds' Answer filed pro se). *See, e.g., Duran v. Carris,* 238 F.3d 1268, 1272–73 (10th Cir. 2001) (finding that attorneys who ghostwrite for pro se litigants without identifying themselves to the court at the very least engage in misrepresentation).

outside his office to draft certain filings for him in this case. *Id.* at 1. He asks for $1,416 plus $99.12 in taxes. *Id.* I construe these Affidavits as Motions to Tax Costs under Fed. R. Civ. P. 54(d)(1) and D.N.M.LR-Civ. 54.1.

> Absent some other statutory authorization, costs available to a prevailing party under Rule 54(d)(1) are limited to those specified in 28 U.S.C. § 1920. . . . [A]lthough a court in its discretion need not award section 1920 costs under Rule 54(d), it has no discretion to award items as costs that are not set out in section 1920.

*Sorbo*, 432 F.3d at 1179–80 (internal block indent omitted). Richards cites to two dictionaries to argue that since "costs are payments made for goods or services not performed by the attorney," his expense in hiring a paralegal constitutes a "cost." [Doc. 211] at 1. I am not persuaded. Nothing in the rules or in § 1920 suggests that paralegal fees are recoverable as costs. I recommend that the Court deny the motion to tax costs. Consequently, I find that Plaintiffs' motion for leave to file a surreply is moot and should be denied. *See* [Doc. 218].

### Plaintiffs' Motion for Rule 11 Sanctions against Defendant Richards

Plaintiffs move for sanctions against Richards because they believe his requests for costs are frivolous. [Doc. 219]. They argue that Richards request for paralegal fees as "costs" is unsupported by any law and is a "back door attempt to collect attorney's fees[.]" *Id.* at 3.

Sanctions under Rule 11 are discretionary. Fed. R. Civ. P. 11(c)(2) ("*If warranted*, the court *may* award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.") (emphases added). Considering the astonishing conduct of Plaintiffs and Mr. Kashanian in this case, I recommend that the Court deny their motion. Regardless of whether Richards did or did not violate Rule 11, an award in favor of Plaintiffs would be unjust.

**Conclusion**

Defendant Richards should not be awarded attorney's fees because he represents himself. His motion to tax costs should be denied because he fails to show that paralegal fees are recoverable as costs. Plaintiffs' Rule 11 motion should be denied because, considering Plaintiffs' and their counsel's conduct, it would be unjust for them to take any award.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Defendant Robert Richards' Motion for Attorney's Fees and Costs [Doc. 175] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant Robert Richards['] Amended Affidavit [Doc. 195] be construed as a Motion to Tax Costs and **DENIED**. Further, it is recommended that Plaintiffs' Motion for Leave to File a Surreply to Richards' Amended Affidavit of Costs [Doc. 218] be **DENIED as moot**.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' Motion for Rule 11 Sanctions against Defendant Robert Richards [Doc. 219] be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

---

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**